Ramsey v. Voorhees.

*Mr. Carl Lentz,* for appellants.

*Mr. L. De Witt Taylor,* for respondent.

JOHN RAMSEY et al., appellants,

*v.*

PETER VOORHEES AND JOHN H. RAMSEY, trustees &c., respondents.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion follows :

This is a creditor's bill.   John Ramsey, one of the defendants, became indebted to the complainants September 28th, 1881, on which indebtedness a judgment was obtained.   The complainant finds no real or personal property of the debtor which can be reached by legal process.

On May 26th, 1879, Mr. Ramsey purchased a house and lot of land and took the title therefor in his wife's name.   This is called the Bound Brook property.   On July 25th, 1879, he executed a deed for a lot on which he was living, to Mr. Herr, and left the deed with his son-in-law, Mr. Large, who held it until November 1st, 1881, when Mr. Large procured a deed for the same property to be executed by Mr. Herr and his wife to Mrs. Ramsey, the wife of the debtor. · This is called the Flemington

property.  Mr. Large took possession of both deeds, and placed them in his safe until the 14th day of October, 1882, when he lodged them with the clerk of the county to be recorded.  The complainants' claim accrued the 28th of September, 1881 ; this was more than two years after the execution of the deed to Mr. Herr, but more than a month before Mr. Herr had executed a deed to Mrs. Ramsey.

The prayers of the bill are that the said conveyances may be declared fraudulent and void as to the complainants, and their judgment declared to be a lien on the lands therein described.

The defendants, John Ramsey and his wife, answer jointly and severally.  He says that at the time of these conveyances he was worth $30,000, and that his only purpose or intention was to secure the title of both tracts in his wife for the benefit of herself and their children.  They both say that they confided entirely to Mr. Large, a counselor-at-law, to complete the transfer of the Flemington property to Mrs. Ramsey, and that they both understood that the rents of the other belonged to her, without saying who received them or who rented the property.  Mrs. Ramsey was produced as a witness; it is worthy of note that Mr. Ramsey was not.

Upon her cross-examination, Mrs. Ramsey said that her husband built a double dwelling-house on the Bound Brook property soon after he traded for it, and that he paid for the house ; that she never learned what it cost; that he rented it and collected the rents ; and that he gave her some of the money when she asked him for it, and gave her some for household purposes. Mrs. Ramsey was also examined respecting the transfer of the title to this property, before a supreme court commissioner, when she said that her husband told her at the time he traded for the property, " that he was trading a great deal and he was afraid he might lose his property."  When examined about four months afterwards, and her attention was called to what she had said before the commissioner, she said, " he did not tell me that; he gave it to me because it was cheap, he said."  Mr. Ramsey had this property insured in his own name.  It seems to me impossible for Mrs. Ramsey to hold this property at Bound

Brook as against this judgment. Her husband's exercise of these unequivocal acts of ownership—such as building on the premises a large and valuable dwelling-house and paying therefor with his own funds, renting the house in his own name, collecting the rents, and insuring the building—are such plain *indicia* of fraud as to baffle all attempts of explanation. See *Bump on Fraud. Conv. 90* and cases cited.

As to the Flemington property, it is claimed that the title passed to Mrs. Ramsey when the deed was executed and left with Mr. Large, July 26th, 1879, and that that being long before the creation of the debts now sought to be enforced, protects that property from this judgment. Let the facts determine this point. There was some talk of transferring the title before that time. Mrs. Ramsey wanted it transferred. Perhaps, according to Mr. Large's testimony, at the time Mrs. Ramsey was ignorant of what was done, yet, while this is clear, he also says that he informed her of the fact and said to her that all was right, without being definite as to time. Mrs. Ramsey was about starting to the state of Wisconsin, and was induced to execute a deed for the Flemington property to Mr. Herr. The deed was prepared by Mr. Large from Ramsey as grantor to Herr as grantee, he having previously consented to act as intermediary. Mr. Ramsey executed the deed in Mr. Large's office, and Mr. Large laid it away until the 1st day of November, 1881, two years and three months, when he prepared a deed in the name of H. B. Herr and wife as grantors and Mrs. Ramsey as grantee, and procured the former to execute it. Mr. Large then lays both deeds in his safe, where they remain until October 14th, 1882, when he hands them to the clerk of the county to be recorded. Six days after this Mr. Ramsey makes an assignment for the benefit of his creditors.

The debt on which the complainants' judgment rests was created September 28th, 1881, more than a month before the execution of the deed by Mr. Herr and wife.

There is not a word of instruction accompanying the execution of the deed by Ramsey. He signed it and acknowledged it, and left it in Mr. Large's office.

Mr. Large says Mr. Ramsey "expressed a willingness to do it;" that Mr. Herr was willing; that he then prepared the deed; Mr. Ramsey "then executed the deed to Burdette Herr and signed it in my office and it was laid away, and for some time I did not see Mr. Herr."

It is manifest, then, that Mr. Ramsey executed the deed and left it in Mr. Large's office, without one word of instruction as to the future disposition of it. Nowhere in the case can I discover anything that warrants me in saying what Mr. Ramsey's intentions were with respect to that instrument. There is no evidence that will carry me beyond this point. He executed the deed, and it was laid away. Counsel for the defendants says that, in every such case, it is a question of intention, and insists that what transpired in Mr. Large's office was evidence of an intention to deliver the deed to Mr. Herr, which was equivalent to a delivery to Mrs. Ramsey. Certainly, such intention cannot be inferred from anything that was said, for not a word is given or intimated. Certainly, no such intention can be inferred from anything that was done, for nothing was done besides the mere execution of the deed and laying it away. Mr. Large says, "he signed it in my office, and it was laid away." Since the deed did not then go to any other destination, by the direction of Ramsey, the strong presumption is that it was laid away, and that instructions were to follow.

If this view be too narrow, and Mr. Large was clothed with authority to deliver the deed to Mr. Herr, then the fact is that that was not done, and Mr. Herr did not make a conveyance to Mrs. Ramsey until more than a month after Ramsey contracted the debt in question. It seems to me that if Mr. Ramsey's real purpose was to effect an immediate transfer of the title to his wife, it was not effected until Mr. Herr had executed his deed to her, if then. If I am right in this view, then the case of *Haston* v. *Castner, 4 Stew. Eq. 697,* must be my guide, and I must declare that this land is subject to the lien of the judgment. A careful research has not enabled me to find a single authority in this state that will justify any other conclusion.

There is another point. In the answer, it is disclosed that

when the debt was created, a note was given to represent it, on which one J. N. Pidcock was surety or endorser. Counsel urge that the complainants have not shown that they have exhausted their rights and remedies against Pidcock, and think that this is incumbent on them before they can proceed against any rights of the real debtor in equity. For this view, he relies on the case of *Wales* v. *Lawrence, 9 Stew. Eq. 207.* That case is undoubtedly well decided. But, supposing the proof to sustain the allegations in the answer before me, I cannot find any analogy in the two cases. Sureties and endorsersare favored in the law. It is enough to say that if the judgment in this case stood against both Ramsey and Pidcock, and the latter had paid it, the statute would have enabled him to use that judgment as the foundation of a proceeding against Ramsey to re-imburse himself. I think there is no ground upon which this defence can stand.

I will advise a decree declaring that Mrs. Ramsey holds the title to the Bound Brook property, in trust for Mr. Ramsey, and that the deeds by which the title to the Flemington property was transferred to her are fraudulent and void as to the complainants, and that the complainants' judgment is a lien on both, and can be enforced against them. The complainants are entitled to costs.

*Mr. J. N. Voorhees,* for appellants.

*Mr. J. J. Bergen* and *Mr. Alvah A. Clark.* for respondents.

PER CURIAM.

This decree affirmed, for the reasons given by Vice-Chancellor Bird.

Mr. Justice Dixon delivered an oral dissenting opinion.

For affirmance—THE CHIEF-JUSTICE, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, CLEMENT—7.

For reversal—DIXON, PARKER, PATERSON, WHITAKER—4.